**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON**

| | |
|---|---|
| **ZACHARY KLEIN,** individually and on behalf of all others similarly situated<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>AND<br><br>**AMBER PAPP,** individually and on behalf of all others similarly situated<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>AND<br><br>**TRACY TANNER**, individually and on behalf of all others similarly situated<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH<br><br>       Plaintiffs<br>v.<br><br>**A1 DEVELOPMENT, LLC** d/b/a Funrize Social Gaming Media Platform<br>℅ Alpine Company Services LLC, Reg. Agent<br>571 S. Washington Street<br>PO Box 1625<br>Afton, WY 83110<br><br>       Defendant. | CASE NO.<br><br>JUDGE<br>MAGISTRATE JUDGE<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Zachary Klein ("Klein"), Amber Papp ("Papp"), and Tracy Tanner ("Tanner", collectively with Klein and Papp, the "Plaintiffs"), individually and on behalf of all others similarly situated brings this Class Action Complaint for Damages and Declaratory Relief against Defendant A1 Development, LLC d/b/a Funrize Social Gaming Media Platform

("Defendant") and make the following allegations based on personal knowledge as to facts pertaining to each of their own experiences, and on information and belief, as well as investigation of counsel, as to all others and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Klein is a natural person who is a resident of Summit County, Ohio.

2.    Papp is a natural person who is a resident of Summit County, Ohio.

3.    Tanner is a natural person who is a resident of Medina County, Ohio.

4.    Defendant is a limited liability company organized under the laws of Wyoming, with its principal place of business in Afton, Wyoming.  Defendant does business as the owner and operator of Funrize Social Gaming Media Platform ("Funrize"), an online gambling platform.[1]

5.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which the number of members of all proposed plaintiff classes in the aggregate is 100 or more, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, minimal diversity exists because at least one member of the plaintiff class is a citizen of a state different from at least one defendant, and none of the exceptions under 28 U.S.C. § 1332(d)(4) apply to this action.

6.    Alternatively this Court has jurisdiction as the parties are diverse, Plaintiff Klein's claims against Defendant are at least $75,000. *See* 28 U.S.C. § 1332(a).

7.    Alternatively this Court has jurisdiction as the parties are diverse, Plaintiff Papa's claims against Defendant are at least $75,000. *See* 28 U.S.C. § 1332(a).

---

[1] https://funrize.com/referral-info (last visited Aug. 30, 2025)

8.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## FACTUAL ALLEGATIONS

**THE PROBLEM OF ONLINE GAMING**

10.     Gambling addiction in the United States has escalated into a significant public health crisis, fueled by the rapid expansion of online casinos and sports betting platforms, including so called "social casinos."

11.     Since the Supreme Court's 2018 decision to legalize sports betting, the number of states with legal sportsbooks has surged from 1 to 38, with total sports wagers increasing from $4.9 billion in 2017 to $121.1 billion in 2023.3 This proliferation has been accompanied by a dramatic rise in gambling addiction cases.[2]

12.     Approximately 2.5 million adults in the U.S. suffer from severe gambling problems, while an additional five to eight million experiencing significant issues.[3] Alarmingly, individuals with gambling disorders are 15 times more likely to commit suicide than the general population.[4]

---

[2]
https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting?utm   (last visited Aug. 30, 2025).
[3]
https://news.harvard.edu/gazette/story/2025/01/online-gambling-is-on-the-rise-panel-says-we-need-to-act-now/#:~:text=The%20National%20Council%20on%20Problem%20Gambling%20estimates%20tha (last visited Aug. 30, 2025).
[4]
https://www.who.int/news-room/fact-sheets/detail/gambling#:~:text=A%20Swedish%20study%20estimated%20that (last visited Aug. 30, 2025).

13.     Between 2018 and 2021, the National Council on Problem Gambling (NCPG) estimated that the risk of gambling addiction grew by 30%. NCPG has also seen significant increases in calls, texts and chats to the National Problem Gambling Helpline—roughly a 45% increase in calls between 2021 and 2022.[5]

14.     Further, internet searches for help with gambling addiction, such as "am I addicted to gambling", have cumulatively increased 23% nationally since Murphy v. NCAA through June 2024. This corresponds with approximately 6.5 to 7.3 million searches for gambling addiction help-seeking nationally, with 180,000 monthly searches at its peak.[6]

15.     The surge in gambling addiction is particularly pronounced among young men, with 10% exhibiting behaviors indicative of gambling addiction, compared to 3% of the general population.[7] Online platforms, including social casinos, have been identified as significant contributors to this trend. These platforms often employ addictive design features, such as near-miss outcomes, fake limited-time sales, and variable reinforcement, to keep users engaged.

16.     The addiction and fallout related thereto is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers. Moreover, despite the growing prevalence of gambling addiction, funding for treatment remains insufficient.

**DEFENDANT'S PRODUCTS ARE ONLINE GAMING CASINOS**

17.     Defendant is the owner and operator of Funrize and a game developer that has created hundreds of games that simulate slot machines and other gambling games.[8]

---

[5] https://www.ncpgambling.org/news/ncpg-statement-on-the-betting-on-our-future-act/ (last visited Aug. 30, 2025).

[6] https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting?utm_ (last visited Aug. 30, 2025).

[7] https://apnews.com/article/sports-betting-compulsive-gambling-addiction-d4d0b7a8465e5be0b451b115cab0fb15 (last visited Aug. 30, 2025).

[8] https://funrize.com/ (last visited Aug. 30, 2025)

18.    Defendant's games operate with two forms of virtual coins. The games have names that are specific to the websites, but in general industry terms, the first are called gold coins, and are available for purchase, as well as being given to players when they first sign up and at certain intervals. Gold coins cannot be redeemed for real-world currency. However, when users play with gold coins and win, this extends their playing time without having to purchase more coins.

19.    The other virtual coins used by Al's websites are called sweeps coins. Al maintains that sweeps coins cannot be purchased. However, when individuals purchase packages of gold coins, they are "given" a set number of sweeps coins. Sweeps coins can be redeemed for real-world currency. Thus, when customers play with them, they are gambling real money, whether the Defendant describes it this way or not.

20.    Defendant's games are games of chance.  Defendant makes available online games in a variety of formats including on Funrize both in its website and Funrize App format. These sites offer numerous casino-style games, especially slot machine games.  Here is an example of one of these games:



21.     Each of the Plaintiffs spent money to play Defendant's gambling games within the six months preceding the filing of this Complaint.

22.     Each of the Plaintiffs also have earned sweeps coins playing Defendant's gambling games preceding the filing of this Complaint which each of the Plaintiffs have redeemed from the Defendant for real-world currency.

**ONLINE GAMING CASINOS LIKE THE DEFENDANT'S PRODUCTS VIOLATE OHIO LAW AND FEDERAL LAW**

23.     Unregulated gambling is illegal in Ohio, and there is a strong public policy against unregulated gambling in this state. The state's strong public policy against gambling includes a statutory right of persons who lose money or other things of value on illegal gambling to recover their money or thing of value.

24.     In Ohio, it is illegal to operate and offer online gambling casinos, including, like Funrize, websites and apps that offer slot machines, jackpots, and poker. *See* R.C. 2915.01(D);

*see also* R.C. 2915.01(C)(7); *see also* R.C. 2915.01(D); *see also* R.C. 2915.01(F)(3); *see also* R.C. 3763.01, *et seq*.

25.     Ohio law prohibits gambling on both "schemes of chance" and "games of chance." Each of these is defined in the code:

> "Scheme of chance" means a slot machine unless authorized under Chapter 3772. of the Revised Code, lottery unless authorized under Chapter 3770. of the Revised Code, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine or a pool not conducted for profit. "Scheme of chance" includes the use of an electronic device to reveal the results of a game entry if valuable consideration is deemed to be paid for a chance to win a prize in the following instances:

> (7) A participant may purchase additional game entries by using points or credits won as prizes while using the electronic device.

R.C. 2915.01(C)(7).

> (D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

R.C. 2915.01(D).

26.     The Ohio Revised Code also defines "gambling device" to include "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance." R.C. 2915.01(F)(3). Defendant's games are nothing more than slot machines, and the outcome of each wager is determined "largely by chance," and so Defendant's games are both "games of chance" and a "gambling device" within the meaning of Ohio law.

27.     Valuable consideration within the meaning of R.C. 2915.01(C)(7) is not limited to a situation where one gambles in the hopes of winning actual cash money. Rather, "valuable consideration" specifically includes "additional game entries by using points or credits won as prizes while using the electronic device." R.C. 2915.02(A)(2). The Ohio Supreme Court has held

"[a]musement is a thing of value" and thus that risking something one purchased to obtain additional amusement is gambling as a matter of law. See *Westerhaus Co. v. City of Cincinnati*, 135 N.E. 2d 318, 336 (Ohio 1956) ("Amusement is a thing of value. Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives.").

28.     Because the Defendant's gambling games are illegal in Ohio, when such games are played in Ohio, they also are illegal under 18 U.S.C. § 1955, as more fully set forth in Count One below.

**PLAINTIFF ZACHARY KLEIN'S FACTUAL ALLEGATIONS**

29.     Plaintiff Zachary Klein is a resident of Ohio who accessed Defendant's games by signing up for Defendant's Funrize App.

30.     On August 13, 2025 Plaintiff Klein accessed his account with the Defendant via Defendant's Funrize App to play 3 Hot Chilli Peppers while in Ohio.  During the course of his session playing the game Plaintiff "won" in excess of 100,000 coins:



31.     Shortly after "winning", Claimant attempted to redeem his "winnings" and was limited by the Defendant to a cash payment of $100.00:



32.     Over the course of the remainder of August 13, 2025 through August 16, 2025 Klein repeatedly spoke with Defendant's representatives both via the app support and via email

regarding the issues with his inability to access his "winnings" and he was only entitled to redeem up to $25.00 because his "winnings" were subject to Funrize Award Rule 5.7 which considered his entries as promotional entries which limit his redemption to $25.00 and alternatively that his "winnings" were limited to Funrize Award Rule 8.9 which purportedly states "In case of a game malfunction during the play, all the following actions and game results will be voided.  In particular, the winnings received may be cancelled."

33.     At no time prior to signing up for Defendant's App was Plaintiff Klein provided a copy of Funrize Award Rule(s).  In fact there is no link to Funrize Award Rules in Funrize's Terms of Use.[9]

**PLAINTIFF AMBER PAPP'S FACTUAL ALLEGATIONS**

34.     Plaintiff Amber Papp is a resident of Ohio who accessed Defendant's games by signing up for Defendant's Funrize App.

35.     On August 13, 2025 Plaintiff Papp accessed her account with the Defendant via Defendant's Funrize App to play 3 Pot Dragons while in Ohio.

36.     Like Plaintiff Klein, Plaintiff Papp won a significant amount on the same day playing one of Defendant's games:



---

[9] https://funrize.com/page/agreement (last visited Aug. 30, 2025)

37.     Shortly after "winning", Plaintiff Papp attempted to redeem 700,000 in coins for currency but was prevented from doing so by the Defendant.

38.     Shortly after being unable to redeem her coins, Plaintiff Papp spoke with Defendant's representatives who also informed her of the applicability of the Funrize Award Rules.

39.     Like Plaintiff Klein, at no time prior to signing up for Defendant's App was Plaintiff Papp provided a copy of Funrize Award Rule(s).

40.     Plaintiff Papp has been unable to redeem any of her sweep coins since August 13, 2025.

**PLAINTIFF TRACY TANNER'S FACTUAL ALLEGATIONS**

41.     Plaintiff Tracy Tanner is a resident of Ohio who accessed Defendant's games by signing up for Defendant's Funrize App.

42.     Plaintiff Tanner spent money to play Defendant's gambling games within the six months preceding the filing of this Complaint.

<u>**CLASS ALLEGATIONS**</u>

43.     **Class Definition.**   Klein, Papp, and Tanner bring this action pursuant to Civ. R. 23 on behalf of a class of similarly situated individuals (the "Class"), defined as follows:

> All Ohio residents who spent money on Defendant's website or apps to access Funrize within the applicable statute of limitations for each of the class claims set forth below.

44.     Excluded from the Class are the following individuals and/or entities: Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards,

sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

45.     Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues.

46.     Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

47.     **Numerosity:** Upon information and belief there are thousands of Ohio residents who are members of this class. Funrize boasts millions of unique visitors per month.[10] Ohio has over 9.3 Million residents over the age of 18.[11]  Although the exact number and identities of Class members is presently unknown, that information can be ascertained through discovery. Class members may be identified through Defendant's own records.

48.     **Commonality and Predominance**: Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.  Here there are central questions of fact and law that are common to the Class which include, but are not limited to (a) whether Defendant's games are games of chance; (b) whether free play is a thing of value under Ohio law; (c) whether individuals playing with Defendant's sweeps coins can recover real month; (d) whether Defendant's games constitute illegal gambling under Ohio law; (e) whether class members are entitled to recover their losses pursuant to R.C. 3763.02; (f) whether Defendant represented on its website or in advertisements that its gambling games do

---

[10]

https://www.nasdaq.com/press-release/the-funrize-social-casino-celebrates-one-year-in-the-u.s.-market-2022-10-28 (last visited Aug. 30, 2025).

[11] https://censusreporter.org/profiles/04000US39-ohio/ (last visited Aug. 30, 2025).

not constitute "real money gambling;" (g) whether Defendant represented on its website or in advertisements that its gambling games are legal in Ohio; (h) whether these misrepresentations constitute deceptive trade practices under Ohio law; (i) whether Defendant was unjustly enriched by its illegal activities; (j) whether Defendant's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (k) whether Defendant's terms of service, and the arbitration agreement contained therein, are each void under Ohio law.

49.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and Class members all lost money in an effort to win either money (with sweeps coins) or additional playing time and amusement (with gold coins) on these illegal gambling games.

50.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interest of the Class members.  Plaintiffs' claims are each made in a representative capacity on behalf of the Class members. Plaintiffs have no interests that are antagonistic to the interests of the other Class members. Plaintiffs have retained competent counsel to prosecute the case on behalf of the Plaintiff and the Class. Plaintiffs and Plaintiffs' Counsel are committed to vigorously prosecuting this action on behalf of the Class Members.

51.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The declaratory relief sought by the Plaintiffs and the Class affects all Ohioans.  It would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal

and factual controversies presented in this complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

### COUNT ONE:  DECLARATORY JUDGMENT
**Declaratory Judgment - Declaration that Defendant's Terms of Service are Unforceable pursuant to 11 U.S.C. § 1955, *et seq.***
**(28 U.S.C. §§ 2201, *et seq.*)**
***On behalf of the Plaintiffs and the Class***

52.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

53.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

54.     18 U.S.C. § 1955(1) defines an "illegal gambling business" as a gambling business which:

(i)     is a violation of the law of a State or political subdivision in which it is conducted;

(ii)    involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii)   has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

*See* 18 U.S.C. § 1955(1)

55.     Based on the allegations above, *supra*, 18 U.S.C. § 1955(1)(i) is met as Defendant's games are games of chance or schemes of chance as defined by R.C. 2915.01(C)(7)

and R.C. 2915.01(D), respectively, and violate R.C. 3763.01. See also *Westerhaus Co. v. City of Cincinnati*, 135 N.E. 2d 318, 336 (Ohio 1956) ("Amusement is a thing of value. Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives.").

56.     Based on the allegations above, *supra*, 18 U.S.C. § 1955(1)(ii) is met as Defendant employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.[12]

57.     Based on the allegations above, *supra*, 18 U.S.C. § 1955(1)(iii) is met because the Defendant has been in business for more than 30 days in Ohio[13], and has had gross revenue of more than $2,000 in a single day.

58.     Based on a review of Defendant's Terms of Use, the Terms of Use do in fact set out the terms and conditions under which the illegal gambling thereon is conducted.  Because the Terms of Use are illegal under 18 U.S.C. § 1955, no portion of Defendant's contract with the Plaintiffs is enforceable.

59.     Based on the allegations above, *supra*, the Plaintiffs and Class seek declarations that:

a.  Defendant's conduct in Ohio is an "illegal gambling business" under 18 U.S.C. § 1955;

b.  The Terms of Use found on Defendant's Website which is accessible both via Defendant's Website and Defendant's App set out the terms and conditions under which Defendant's illegal gambling is conducted; and

c.  The Terms of Use, which include an arbitration agreement, are unenforceable.

---

[12] *See also* https://www.linkedin.com/company/funrize (last visited Aug. 30, 2025) (Company's LinkedIn profile categorizes company size between 201-500 employees)
[13] *Id.* (Company's LinkedIn profile listed 2021 as founding date)

## COUNT TWO: DECLARATORY JUDGMENT
### Declaratory Judgment - Declaration that Contract is Unforceable
### (R.C. 2721.01, *et seq.*)
### *On behalf of the Plaintiffs and the Class*

60.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

61.     At all relevant times, there was also in effect a declaratory judgment statute in the Ohio Revised Code, R.C. 2727.01, *et seq*.

62.     Based on the allegations herein, *supra*, Defendant's games are governed by the Terms of Use to facilitate illegal gambling.  The Terms of Use are therefore void pursuant to R.C. 3763.01 which states that "[a]ll promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void." *See* R.C. 3763.01

63.     As Defendant's Terms of Use are void under R.C. 3763.01, Plaintiffs and Class Members seek a declaration pursuant to R.C. 2727.01 that Defendant's Terms of Use, including the Arbitration Agreement contained therein, is void under Ohio Law.

## COUNT THREE: VIOLATIONS OF R.C. 3763.02
### *On behalf of the Plaintiffs and the Class*

64.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

65.     R.C. 3763.02 provides:

If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing

and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner, thereof with costs of suit.

R.C. 3763.02.

66.     Based on the allegations herein, *supra*, Plaintiffs and the Class seek recovery of all amounts paid to the Defendant through purchases on Defendant's websites or app within the six months preceding the filing of this complaint minus all amounts that each Plaintiff and/or class member was paid back as a result of any winnings.

## COUNT FOUR: VIOLATIONS OF R.C. 3763.04
### *On behalf of the Plaintiffs*

67.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

68.     Pursuant to R.C. 3763.04,

If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

R.C. 3763.04

69.     Based on the allegations herein, *supra*, Plaintiffs seek recovery of the total net losses by class members of all virtual currency on Defendant's websites or Defendant's app that occurred more than six months prior to the filing of this Complaint that are not, for any reason, otherwise recoverable.

## COUNT FIVE: VIOLATIONS OF R.C. 1345.01, *et seq.*
### *On behalf of the Plaintiffs and the Class*

70.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

71.     Each of the Plaintiffs and class members are consumers as defined by R.C. 1345.01(D).

72.     Defendant is a supplier as that term is defined by R.C. 1345.01(C).

73.     As demonstrated by the allegations herein, *supra*, the transactions between the Defendant and the Plaintiffs and the Defendant and the Class Members are consumer transactions as that term is defined by the CSPA as Plaintiffs and Class Members accessed Defendant's website and/or Defendant's app for personal, family or household use.

74.     "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

75.     R.C. 1345.02(B)(1) prohibits a supplier from representing that the subject of a consumer has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have. *See* R.C. 1345.02(B)(1).

76.     R.C. 1345.02(B)(2) prohibits a supplier from representing the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not. *See* R.C. 1345.02(B)(2).

77.     Based on the allegations herein, *supra*, Defendant represents in Paragraph 3 of its Terms of Use that its Sweeps Coins cannot be purchased while acknowledging they may be awarded "gratuitously".[14]

78.     Based on the allegations herein, *supra*, Defendant's representations that the Coins are "gratuitous" is patently false as each of the Plaintiffs had to purchase additional coins and

---

[14] *See* https://funrize.com/page/agreement (last visited Aug. 30, 2025)

Defendant's Terms of Use, specifically Paragraph 5.2, specifically reference the ability to purchase additional coins.[15]

79.     The Defendant's actions described above violate R.C. 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

80.     The Defendant's misrepresentations described above violate R.C. 1345.02(B)(1) and/or R.C. 1345.02.

81.     The Plaintiff and Class members have a private right of action under the CSPA for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages and attorneys' fees.

82.     Based on the allegations above, *supra*, the Plaintiff and Class Members who were harmed within two years of the filing of this case are entitled to an award of actual damages, costs, statutory damages and attorneys' fees.

**COUNT SIX: UNJUST ENRICHMENT**
***On behalf of the Plaintiffs and the Class***

83.     Plaintiffs restate and incorporate each of the allegations contained in the preceding paragraphs as if fully rewritten herein.

84.     Based on the allegations herein, *supra*, the Defendant retained material benefits when the Plaintiffs and Class members purchased coins from the Defendant's website and/or Defendant's app and Defendant knew of the existence of these purchases.

85.     Because the only purpose of these coins being purchased was for the Plaintiffs and Class Members to gamble with them on Defendant's illegal gambling games, Defendant's retention of the monies paid to them is unjust and the Plaintiffs and Class Members are entitled

---

[15] *Id.*

to restitution for the money the Defendant took from them and disgorgement of the profits obtained by Defendant that are lawfully the proceeds of the Plaintiffs and Class Members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Zachary Klein, Amber Papp, and Tracy Tanner individually and on behalf of the Class respectfully request an Order from this Court as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein.

B. Designating Klein, Papp and Tanner as representatives of the Class and their undersigned counsel as Class Counsel;

C. Issuing a declaration that Defendant's conduct in Ohio is an "illegal gambling business" under 18 U.S.C. § 1955 for the allegations contained in Count One;

D. Issuing a declaration that the Terms of Use found on Defendant's Website which is accessible both via Defendant's Website and Defendant's App set out the terms and conditions under which Defendant's illegal gambling is conducted for the allegations contained in Count One;

E. Issuing a Declaration that the Terms of Use, which include the Arbitration Agreement, are unenforceable for the allegations contained in Count One and/or alternatively Count Two;

F. Awarding Klein, Papp, Tanner and the Class all damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

G. That the Court enjoin Defendant ordering it to cease from unlawful activities;

H. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

I. For an award of all of Plaintiffs' reasonable attorneys' fees and costs against the Defendant for the allegations contained in all Counts of the Complaint; and

J. For all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (0039425)

20

Jeffrey A. Crossman (0073461)
Marita I. Ramirez (0101882)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 (e-facsimile)
notices@dannlaw.com
*Counsel for Plaintiffs Zachary Klein, Amber Papp,*
*Tracy Tanner, and the putative class.*

## **JURY DEMAND**

Plaintiffs  hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Jeffrey A. Crossman (0073461)
Marita I. Ramirez (0101882)
DannLaw
*Counsel for Plaintiffs Zachary Klein, Amber Papp,*
*Tracy Tanner, and the putative class.*